UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BINKLEY H.,[1] | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 1:22-cv-01490-MJD-TWP ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Binkley H. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. See 42 U.S.C. §§ 423(d), 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in May 2015, alleging an onset of disability as of December 10, 2014. [Dkt. 12-8 at 16.] A hearing was held before Administrative Law Judge Jody Hilger Odell ("ALJ") on August 10, 2017, [Dkt. 12-2 at 35], and Claimant's application was denied on November 28, 2017. *Id.* at 20. Claimant appealed to this Court, and Judge Tanya Walton Pratt remanded the case to the Commissioner on February 13, 2020. [Dkt. 12-9 at 4.] A second hearing was held before ALJ Odell on September 17, 2020. [Dkt. 12-8 at 30.] On October 30, 2020, the ALJ issued her determination that Claimant was not disabled. *Id.* at 16. The Appeals Council then denied Claimant's request for review on June 1, 2022. *Id.* at 2. Claimant timely filed his Complaint on July 27, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of December 10, 2014. [Dkt. 12-8 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease; and history of right knee medial meniscus tear." *Id.* at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally climb ramps and stairs, kneel, crouch, crawl; never climb ladders, ropes or scaffolds; frequently balance and stoop; frequently finger and reach with the left upper extremity.

*Id.*

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id.* at 23. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as folder, information clerk, and mail clerk. *Id.* Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 24.

### IV. Discussion

Claimant proffers two main arguments to support his request to reverse the ALJ's decision. First, Claimant argues that the ALJ erroneously applied SSR 16-3p in assessing his subjective symptoms. [Dkt. 14 at 21-23.] Second, Claimant asserts that the ALJ provided an inadequate explanation to support her assessment of the medical opinions of record regarding

Claimant's ability to use his hands. *Id.* at 14. Each of these arguments is addressed, in turn, below.

### A. ALJ's Assessment of Claimant's Subjective Symptoms

In assessing a claimant's subjective symptoms, SSR 16-3p directs the ALJ to consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) any precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any measures the claimant uses or has used to relieve pain or other symptoms, and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *3. An ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).

At the hearing, Claimant testified that he has neck pain and numbness that radiates down to his arms and that he cannot sit or stand for over five or ten minutes before he needs to change position. [Dkt. 12-8 at 39-40.] He also stated that he has severe pain over twenty days out of each month, which makes him need help washing and getting dressed and prevents him from driving. *Id.* at 41-44.

5

The ALJ noted that Claimant's degenerative disc and pinched nerve affect his ability to stand and walk for any significant period of time; Claimant has pain and numbness that radiates from his neck to his arms; and medical exams showed abnormalities in his neck, arms, back, and knees. *Id.* at 20-21. However, the ALJ concluded:

> I find that although the claimant's medically determinable impairments could reasonably be expected to cause some of the symptoms of the types alleged, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence.

*Id.* at 21.

The ALJ provided four reasons to support this conclusion. First, the ALJ noted:

> Although the claimant has been diagnosed with degenerative disc disease, exams frequently showed full range of motion, 5/5 strength of his bilateral upper and lower extremities, negative straight leg raise test bilaterally, negative facet loading, negative Fabers, no hyperreflexia, negative Hoffman's, normal deep tendon reflexes, intact sensation in the upper and lower extremities, normal gait with no assistive device (7F/24-25, 9F/40, 46, 160, 599, 606, 666).

*Id.* Claimant argues that an ALJ may not discount his testimony and other evidence regarding his subjective symptoms solely based on the lack of objective evidence. That is correct. While "objective medical evidence is a useful indicator," an ALJ may not rely solely on the lack of objective medical evidence to discount a claimant's testimony about his limitations. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); 20 C.F.R. § 404.1529(c)(2). "[T]he ALJ must consider a claimant's subjective complaint of pain if supported by medical signs and findings." *Clifford*, 227 F.3d at 871.

Here, although some of Claimant's test results are normal, the ALJ noted abnormal results as well, including decreased range of motion of Claimant's neck, arms, back, and knees, decreased left grip strength, positive straight leg raise, and decreased strength in Claimant's right lower extremity. [Dkt. 12-8 at 20; Dkt. 12-14 at 16, 392-94.] However, the ALJ did not explain

6

why the normal test results she cites are inconsistent with Claimant's alleged symptoms, especially in light of the relevant abnormal results. Simply pointing to normal results without any analysis does not permit the Court to trace the ALJ's reasoning.

The second reason the ALJ gives for discounting Claimant's subjective symptoms allegations is that "in December 2019, it was noted the claimant declined surgery after he underwent left C7 nerve root block with neural interventional radiology, because 'It gave him excellent and almost complete relief' (9F/600, 667)."[3]

Claimant underwent a nerve root block on April 22, 2019. [Dkt. 12-14 at 38.] On May 20, 2019, his physician noted that Claimant reported "satisfactory pain control" from the procedure. *Id.* at 61. At a July 12, 2019, visit with an orthopedic doctor, Claimant reported that "his left upper extremity radicular pain is . . . no[w] coming back. In fact, he now has pain in both arms and is complaining of significant weakness in bilateral upper extremities with difficulty holding objects and performing tasks with his hands." *Id.* at 108. The doctor recommended surgery and ordered an updated MRI. *Id.* at 113. The MRI was performed the following day and showed the following:

---

[3] The Court notes that the ALJ did not address whether Claimant's subjective symptoms were disabling in the over four years between the alleged onset date and the nerve block.

> Progress Notes by Dhadha, Hardeep K., MD (continued)     Version 1 of 1 at 11/15/2019 11:20 AM
> At C5-C6 there is a small posterior disc osteophyte complex effacing the CSF anteriorly.
> At C6-C7 there is a posterior left subarticular disc osteophyte complex effacing the CSF anteriorly. There is ligamentum flavum hypertrophy. There is mild central canal stenosis. There are bilateral uncovertebral degenerative changes with severe left and moderate to severe right neuroforamina stenosis.
> At C7-T1 there is mild posterior spurring
>
> IMPRESSION:
> 1. Multilevel degenerative changes of the cervical spine as described above more pronounced at C6-C7. There has been some progression compared to prior MRI.[HD.2]

*Id.* at 163. A visit note from November 15, 2019, states that the nerve root block "gave [Claimant] excellent and almost complete relief" and that, while surgery had been recommended, Claimant "wants to defer surgery for now and wants to continue with conservative treatment." *Id.* at 165.[4] An interlaminar cervical epidural steroid injection was scheduled for December 11, 2019. *Id.* On November 22, 2019, Claimant's pain management physician noted that Claimant continued to complain of pain and that he was scheduled for another injection. *Id.* at 213. Claimant's pain medication prescriptions were renewed. Claimant underwent another steroid injection as scheduled on December 11, 2019, and it was noted that his "pain improved immediately following the injection" and that he would be seen in 2-3 months for a repeat of the procedure. *Id.* at 233. He had a telehealth visit (due to COVID 19) on March 26, 2020, for pain management, at which his pain medication prescriptions were again renewed. *Id.* at 289. The medical records do not contain any additional treatment records related to Claimant's pain

---

[4] The Commissioner incorrectly suggests in her brief that the nerve block occurred in November 2019. It did not; it actually occurred in April 2019. As discussed above, Claimant had clearly begun to experience symptoms again in the months between the nerve block and the November 2019 appointment, as evidenced by the subsequent injection he underwent.

between that visit[5] and the September 2020 hearing.[6]  At the hearing, Claimant testified that although the injections "dim the pain down a lot," the pain is back in approximately a month or when he tries to perform tasks outside of his limit, such as picking up a heavy item or cooking. [Dkt. 12-8 at 45.]

It is unclear what the ALJ meant when she noted that Claimant reported "excellent and almost complete relief" from the nerve block.  If the ALJ took that statement to mean that Claimant no longer experienced pain after the nerve block, that is clearly not consistent with the record.  Perhaps what she meant was that Claimant's pain must not be as bad as he claims it is because he was offered surgery and declined in favor of continuing conservative treatment.  That is a valid consideration.  *See* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").  However, SSR 16-3p continues:  "We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."

---

[5] The Commissioner states in her brief that "Plaintiff's brief mentions no treatment whatsoever between November 2019 and the September 2020 hearing." [Dkt. 17 at 8.]  That may be the case, but the record contains evidence of such treatment.

[6] The Commissioner notes in her brief that Claimant was seen in an emergency room for abdominal pain in May 2020 and that the notes from that visit state that he did "not have any other acute complaints at this time." [Dtk. 17 at 8.]  The Commissioner's suggestion that this indicates that Claimant was not experiencing back and arm pain at that time is incorrect.  Claimant's degenerative disc disease and resulting symptoms are a **chronic** health issue outside of the purview of an emergency room physician, who is concerned with **acute** issues, as the physician's note indicates.  *See* https://medlineplus.gov/ency/imagepages/18126.htm (last visited August 17, 2023) (explaining difference between acute and chronic conditions).

There is no indication that the ALJ considered Claimant's reasons for declining surgery, which may have been rational even if the conservative treatment did not provide lasting relief.

The third reason given by the ALJ for discounting Claimant's subjective symptom allegations is the fact that Claimant worked part-time after the alleged onset date:

> Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

[Dkt. 12-8 at 21.] The "work activity" in question was in 2015, when Claimant earned $1,556.45. Claimant testified that the job in question was "something I was trying just to see if I could—able to keep it, you know to stick it out and it didn't work." [Dkt. 12-8 at 38.] At his first hearing, Claimant testified that he had to stop working as an auto mechanic because of the physical demands of that job, so he switched to a part-time, seasonal job in food service at a sports arena in 2013. [Dkt. 12-2 at 44.] In December 2014, he reported to his physician that his pain was worse while working as a cook. [Dkt. 12-7 at 220.] Given the evidence as a whole, it is difficult to understand how this failed job attempt that ended very shortly after the alleged onset date is a reason to discount Claimant's subjective symptom allegations.

The final reason the ALJ gave for discounting Claimant's subjective symptom allegations is that

> claimant's admitted activities of daily living also suggest the claimant is not as limited as alleged and remains capable of performing work within the restrictions set forth herein. For example, he reported being capable of preparing meals, performing housework, cleaning, watching television, and driving despite his symptoms (1F/3, 6F/62, 9F/211, Hearing Transcript).

[Dkt. 12-8 at 21.] The Commissioner concedes that this description of Claimant's reports of activities is "imprecise" and that "the ALJ could have been more precise in evaluating how Plaintiff's reports of activities affected the persuasiveness of his subjective account of

10

limitations," but argues that any errors are "irrelevant" because "[n]ot all of the ALJ's reasons have to be sound as long as enough of them are." [Dkt. 17 at 11 (citing *Halsell v. Astrue*, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009)).] But, as explained in detail above, in this case none of the reasons given by the ALJ were sound.

A reviewing court "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester*, 920 F.3d at 510 (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). The reviewing court will find an ALJ's decision to be "patently wrong" only if it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ's stated reasons for rejecting Claimant's subjective symptom allegations lack adequate explanation and support in the record. Remand is therefore required.

### B. Failure to Account for Hand Limitations in RFC

The ALJ determined that Claimant is limited to light work and that his degenerative disc disease restricts him to "frequent reaching, handling, fingering and feeling bilaterally," [Dkt. 12-8 at 20], which means that she found Claimant capable of using his hands for those actions for up to two-thirds of each work day. Claimant contends that the ALJ failed to consider all evidence and provide an adequate explanation to support her conclusion that he is capable of frequently using his left hand. [Dkt. 14 at 15.]

There are several medical opinions in the record regarding Claimant's ability to use his left hand. An ALJ is required to evaluate all medical opinions on an equal basis for "persuasiveness." 20 C.F.R. § 404.1520c(a). ALJs are instructed to consider factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the professional's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the professional's specialization. 20 C.F.R. §

11

404.1520c(c). The regulation expressly recognizes that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v). After considering the relevant factors, an ALJ must articulate how persuasive he finds each medical opinion in his decision. 20 C.F.R. § 404.1520c(b). The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

On June 26, 2015, after examining Claimant, Andrew Koerber, M.D., a State Agency consultant, opined that Claimant was able to handle object with his left hand "for a short period of time," but that he would have difficulty lifting/carrying objects heavier than twenty pounds and handling objects with his left hand repetitively, and that Claimant could pick up small objects but not button with his left hand. [Dkt. 12-7 at 6-7.] The ALJ gave the opinion of Dr. Koerber only "some weight." [Dkt. 12-8 at 21.] The only reason the ALJ gave for this assessment is that the medical records "show the claimant is not as limited in his ability to use his left upper extremity as he is able to frequently finger and reach as exams showed he is able to fully close all fingers into fists bilaterally, and finger abduction is 5/5 bilaterally (10F/4)." *Id.* at 21-22. Without further explanation, this is not an adequate reason for discounting Dr. Koerber's opinion. The ALJ fails to explain how Claimant's ability to make a fist and abduct (spread out) his fingers on his left hand equates to the ability to frequently finger, and that conclusion is certainly not self-evident.[7]

---

[7] The Commissioner states in her brief that "Dr. Koerber never said Plaintiff could not frequently finger and reach with the left arm, and thus it is not clear his comments were incompatible with

On September 29, 2015, B. Whitley, M.D., a State Agency medical consultant who did not examine Claimant, opined that Claimant was limited to occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten pounds; and frequently using his left upper extremity for fine manipulations/fingering. [Dkt. 12-3 at 17.] The ALJ relied on Dr. Whitley's opinion in making her determination that Claimant could frequently use his left hand for fingering. However, the ALJ failed to give any reason why she found Dr. Whitley's opinion more persuasive than Dr. Koerber's opinion. This was error, especially given that Dr. Koerber examined Claimant while Dr. Whitley did not.

On June 27, 2017, Patrice Cates-Lonberger, M.D., Claimant's treating physician, opined that Claimant could occasionally lift and carry ten pounds and could use his hands for grasping, turning, twisting, fine manipulations, and reaching only fifty percent of an eight-hour workday. [Dkt. 12-7 at 319-22.] The ALJ gave this opinion some weight, noting:

> As a treating source, Dr. Cates-Lonberger has an evaluation and treatment history with the claimant. However, the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, the examination findings show the claimant repeatedly denies a gait disturbance and none is noted. There are no recommendations for the claimant to elevate extremities and recent examinations show only slightly diminished strength of the left upper extremity.

[Dkt. 12-8 at 22.]

"[W]hen a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion." *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022). However, Claimant's medical records show that he has repeatedly complained to his doctor about

---

the RFC finding." [Dkt. 17 at 12.] But the ALJ herself recognized that she found Claimant less limited in the use of his left upper extremity than Dr. Koerber did. [Dkt. 12-8 at 21-22.]

the numbness and weakness in his left upper extremity evidenced by dropping objects, especially after overuse; the records are also replete with relevant abnormal findings.  [*See* Dkt. 14 at 16 (citing relevant medical records).]  Claimant's assertion that overuse of his left hand leads to more severe symptoms is consistent with Dr. Cates-Lonberger's opinion to limit Claimant's hand-use to only fifty percent of an eight-hour workday; this opinion is also consistent with that of examining physician Dr. Koerber.  Although this opinion may be based on Claimant's self-reported symptoms, it is unclear what type of objective findings the ALJ would expect to demonstrate that overuse can worsen Claimant's symptoms.  Thus, the ALJ did not adequately explain why Dr. Cates-Lonberger's opinion is less persuasive than that of Dr. Whitley.

For the reasons set forth above, the Court finds that remand is necessary because the ALJ did not adequately explain why she found some medical opinions more persuasive than others.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  21 AUG 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.